## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RASHIM LEE,** | : | **Civil No. 3:24-CV-00893** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **LELAND DUDEK,** | : | |
| **Acting Commissioner of Social Security,[1]** | : | |
| | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION</u>

## I.    <u>Introduction</u>

Case law has long placed a duty of articulation upon Administrative Law Judges when deciding Social Security disability claims. Thus, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id.</u> at 706-

_____

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for the previously named defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999). A necessary corollary to this duty of articulation is the concept that when a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir. 1993). At a minimum this obligation to articulate the basis of a disability determination means that the ALJ's ruling must correctly state the facts as they relate to the claimant's disabilities. Accordingly, when an ALJ's decision rests upon a material misapprehension concerning the facts, a remand is often necessary.

So it is here.

Rashim Lee was a fifty year old worker who applied for disability benefits based upon the combined effects of a series of severe impairments, including osteoarthritis; rotator cuff tear; cubital tunnel syndrome; diabetes; and neuropathy. (Tr. 20). Lee's treating physician reported that these impairments confined him to a limited range of sedentary work. (Tr. 968-69). This view was shared by an examining, consulting physician who also agreed that Lee could do no more than a limited range of sedentary work. (Tr. 690-99). Thus, every physician who actually treated or examined Lee agreed that he was limited to sedentary work due to his

physical impairments. Moreover, the first state agency expert to consider Lee's case also found that he could only perform sedentary work, and therefore could not return to his past relevant work. (Tr. 61-65). The only contrary view that deviated from this medical consensus was the opinion of a second non-examining state agency source, who found on reconsideration that Lee could perform light work. (Tr. 82-86).

Thus, the preponderance of the medical opinion evidence—including one state agency expert opinion—clearly stated that Lee could only perform a limited range of sedentary work. Notwithstanding this evidence, the ALJ found that Lee could perform light work. (Tr. 21). In reaching this result the ALJ concluded— incorrectly—that both state agency experts determined that Lee could perform light work. (Tr. 23). The ALJ then relied upon this inaccurate recital regarding the medical opinion evidence to support his residual functional capacity assessment, and his finding that Lee was not disabled. (Tr. 26-27).

This conclusion rests on a misstatement of fact. The ALJ erroneously characterized the medical opinion as being in equipoise with two medical opinions supporting a light work RFC and two other opinions restricting Lee to sedentary work. In fact, the preponderance of the medical opinion evidence from three of the four medical sources agreed that Lee could only perform sedentary work. Since the ALJ's decision was grounded upon this potentially material factual error concerning

3

the medical opinion evidence,  we find that this decision's evaluation of the medical opinion evidence is based upon "the wrong reason." Id. Accordingly, we will remand this case for further consideration and evaluation of the medical opinion evidence.

## II.    **Statement of Facts and of the Case**

In November of 2021, Rashim Lee filed an application for a period of disability and disability insurance benefits along with an application for supplemental security income pursuant to Titles II and XVI of the Social Security Act. on November 10, 2021. In both applications, Lee alleged an onset of disability beginning January 2, 2020. (Tr. 17). According to Lee he had become disabled due to the combined effects of the following severe impairments: osteoarthritis; rotator cuff tear; cubital tunnel syndrome; diabetes; and neuropathy. (Tr. 20). Lee was born on December 17, 1971, and was 50 years old, which under the Commissioner's regulations made him an individual closely approaching advanced age, on the amended alleged disability onset date. (Tr. 25).

Lee's disability application was supported by nearly 700 pages of clinical records and medical opinions. (Tr. 355-1026). In particular, the record contained four medical opinions, three of which found that Lee could do no more than sedentary work.

One of these opinions came from a treating physician, Dr. Mark Goedecker, who provided physical assessment of Lee on February 9, 2023. (Tr. 968-69). In this assessment Dr. Goedecker stated that Lee's impairments would constantly interfere with his ability to work; indicated that he would need at least four unscheduled breaks during the workday; found that he could only lift ten or twenty pounds occasionally; determined that Lee would be limited in reaching and fingering; and reported that Lee would miss more than four days of work each month. (Id.) Thus, at best, based upon his treating relationship with the plaintiff, Dr. Goedecker opined that Lee could do no more than a confined scope of sedentary work.

Dr. Goedecker's conclusions were echoed by a consulting examining physician, Dr. Ahmed Kneifati, who conducted an examination of Lee on March 9, 2022. (Tr. 690-99). Based upon his examination, Dr. Kneifati found that Lee could only occasionally lift of carry up to ten pounds; was limited in his right hand reaching and feeling; and was subject to multiple postural and environmental limitations. (Tr. 694-97). Dr. Kneifati's findings also clearly restricted Lee to no more than a limited range of sedentary work.

This conclusion was also shared by the first state agency expert to examine Lee's case, Dr. Gerald Levandoski. (Tr. 56-66). On March 30, 2022, Dr. Levandoski issued an opinion in Lee's case. (Id.) Dr. Levandoski found that Lee could only

occasionally life up to ten pounds. (Tr. 61). He also found that Lee would be subject to an array of limitations in terms of reaching, fingering, stooping, balancing, kneeling and crouching. (Tr. 61-2). Moreover, according to Dr. Levandoski Lee would need to avoid extreme cold, vibrations and machinery hazards. (Tr. 63). Dr. Levandoski specifically found that Lee was confined to sedentary work due to his impairments. (Tr. 65).

Thus, the record reveals a broad medical consensus among treating, examining, and state agency expert sources that Lee could do no more than a limited range of sedentary work, a potentially significant finding given Lee's status as a worker closely approaching advanced age. The only outlier among these medical opinions was a second non-examining state agency source, Dr. Angela Walker, who opined on December 13, 2022, that Lee could perform light work. (Tr. 86).

It was against this clinical backdrop that an ALJ conducted a hearing regarding Lee's disability application on June 28, 2023, at which Lee and a vocational expert testified. (Tr. 34-54). Following this hearing, on August 2, 2023, the ALJ issued a decision denying Lee's application for benefits. (Tr. 14-31). In that decision, the ALJ first concluded that Lee met the insured status requirements of the Social Security Act through December 31, 2023 and had not engaged in substantial gainful activity since January 2, 2020, the alleged onset date. (Tr. 19-20). At Step 2

of the sequential analysis that governs Social Security cases, the ALJ found that Lee

suffered from the following severe impairments: osteoarthritis; rotator cuff tear;

cubital tunnel syndrome; diabetes; and neuropathy. (Tr. 20). At Step 3 the ALJ

determined that Lee did not have an impairment or combination of impairments that

met or medically equaled the severity of one of the listed impairments. (Id.)

> The ALJ then fashioned the following RFC for the plaintiff:
>
> After careful consideration of the entire record, the undersigned finds
> that the claimant has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) and 416.967(b) and he can
> frequently handle, finger, and feel with his right upper extremity; and
> occasionally reach, push, and pull with his right upper extremity. He
> can occasionally crawl and never climb ladders, ropes, or scaffolds. He
> should avoid concentrated exposure to extreme cold and vibrations and
> even moderate exposure to dangerous machinery or unprotected
> heights.

(Tr. 21).

 In reaching this conclusion, which deviated from three out of the four medical

opinions in this case, the ALJ first concluded that the opinions of Doctors Kneifati

and Goedecker—the only physicians who had actually treated, examined, or seen

Lee—were unpersuasive. (Tr. 23-24). The ALJ then misstated and overstated the

state agency expert medical opinion evidence. According to the ALJ:

> The record includes a March 2022 prior administrative medical finding
> from a state agency medical consultant, Gerald Levandoski, MD. *Dr.*
> *Levandoski stated the claimant could perform light work*; stand and/or

walk two hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch, and climb ramps and stairs; never crawl and climb ladders, ropes, or scaffolds; frequently handle and occasionally reach overhead with his right upper extremity; limited far acuity and near acuity in the right eye; and avoid concentrated exposure to extreme cold, vibration, and hazards (2A/6-9; 4A/6-9). The record includes a December 2022 prior administrative medical finding from a state agency medical consultant, Angela Teresa Walker, MD. Dr. Walker noted the claimant could perform light work; occasionally push, pull, and operate hand controls with his right upper extremity; occasionally crawl; never crawl and climb ladders, ropes, or scaffolds; frequently handle, finger, or feel and occasionally reach with his right upper extremity; avoid concentrated exposure to extreme cold and vibration; and avoid moderate exposure to hazards (6A/5-7; 8A/6-9). Insofar as they state the claimant can perform light work; frequently handle, finger, and feel with his right upper extremity; and occasionally reach, push, and pull with his right upper extremity; occasionally crawl; never climb ladders, ropes, or scaffolds; should avoid concentrated exposure to extreme cold and vibrations; even moderate exposure to dangerous machinery or unprotected heights; these statements are supported by the longitudinal treatment notes, which generally show the claimant is in no acute distress with good range of motion, normal and symmetric hands, capillary refill in less than two seconds, symmetric pulses, intact cranial nerves, no atrophy, no focal deficit, no clubbing, no cyanosis, and no edema (2F; 5F; 6F; 10F; 14F; 16F; 17F; 19F; 20F; 21F). These statements are also consistent with the claimant's activities of daily living, which shows he helps care for his dog and can prepare simple meals and shop in stores (3E; 9E). Further, Dr. Levandoski and Dr. Walker are highly qualified experts who had the opportunity to review the claimant's records.

(Tr. 23) (emphasis added).

This description clearly misstated Dr. Levandoski's opinion. Contrary to the

ALJ's assertion, Dr. Levandoski never opined that Lee could perform light work.

Instead, the doctor flatly stated that Lee was limited to sedentary work, thus concurring in the opinions of the treating and examining sources. Moreover, the ALJ's factual misstatement erroneously altered the quantum of evidence in a way which plainly prejudiced Lee. Instead of accurately describing the opinion evidence as a broad consensus among treating, examining, and state agency sources restricting Lee to sedentary work, with one outlying opinion, the ALJ suggested that the opinion evidence was somehow evenly balanced between two experts who opined that Lee could perform light work and two other experts who limited him to sedentary work. Having erred in this fashion, the ALJ then chose to adopt a light work RFC for Lee, even though the preponderance of the medical opinion evidence when accurately understood, found that he could not perform light work. The ALJ then relied upon this inaccurate recital regarding the medical opinion evidence to support his residual functional capacity assessment, and his finding that Lee was not disabled. (Tr. 26-27).

This appeal followed. (Doc. 1). On appeal, Lee challenges the ALJ's evaluation of this medical opinion evidence. Since we find that this medical opinion evidence evaluation rests upon a material factual error, we agree that the ALJ's responsibility of adequately articulating the basis for a medical opinion evaluation

has not been met in this this case. Therefore, we will remand this case for further consideration and evaluation of the medical opinion evidence.

## III.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966).   "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in

this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."
> Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v.
> Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)
> (comparing the substantial-evidence standard to the deferential clearly-
> erroneous standard).

Biestek, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is

disabled, but rather whether the Commissioner's finding that she is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc.

Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a).  To satisfy this

requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.  20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r

of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R.

§§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).    In making this

assessment, the ALJ considers all of the claimant's medically determinable

impairments, including any non-severe impairments identified by the ALJ at step

two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's

assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be

set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113,

129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL

1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub

nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21,

2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D.

Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018

WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating

the existence of a medically determinable impairment that prevents him or her in

engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this

burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show

that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." <u>Biller</u>, 962 F.Supp.2d at 778–79 (quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

16

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported

17

by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113; <u>see also</u> <u>Metzger v.</u>
<u>Berryhill</u>, 2017 WL 1483328, at *5; <u>Rathbun v. Berryhill</u>, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive
requisites. Most significant among these legal benchmarks is a requirement that the
ALJ adequately explain the legal and factual basis for this disability determination.
Thus, in order to facilitate review of the decision under the substantial evidence
standard, the ALJ's decision must be accompanied by "a clear and satisfactory
explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d
Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate
which evidence was accepted, which evidence was rejected, and the reasons for
rejecting certain evidence. <u>Id</u>. at 706-707. In addition, "[t]he ALJ must indicate in
his decision which evidence he has rejected and which he is relying on as the basis
for his finding." <u>Schaudeck v. Comm'r of Soc. Sec</u>., 181 F. 3d 429, 433 (3d Cir.
1999).

### C.     <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

Lee filed his disability application following a paradigm shift in the manner
in which medical opinions were evaluated when assessing Social Security claims.
Prior to March 2017, ALJs were required to follow regulations that defined medical
opinions narrowly and created a hierarchy of medical source opinions with treating

sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court has aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

19

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions.

Judicial review of this aspect of ALJ decision-making is still guided by several

settled legal tenets. First, when presented with a disputed factual record, it is well

established that "[t]he ALJ – not treating or examining physicians or State agency

consultants – must make the ultimate disability and RFC determinations." Chandler

v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating

medical opinions " the ALJ may choose whom to credit but 'cannot reject evidence

for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d

Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision

is accompanied by an adequate, articulated rationale, it is the province and the duty

of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

An ALJ is [also] entitled generally to credit parts of an opinion without
crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–
00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015);
Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that
"SSR 96–2p does not prohibit the ALJ from crediting some parts of a
treating source's opinion and rejecting other portions"); Connors v.
Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June
10, 2011). It follows that an ALJ can give partial credit to all medical
opinions and can formulate an RFC based on different parts from the
different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–
00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

Finally, with respect to assessing competing medical opinion evidence, it is

clear beyond peradventure that:

When a conflict in the evidence exists, the ALJ may choose whom to
credit but "cannot reject evidence for no reason or for the wrong
reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993). The
ALJ must consider all the evidence and give some reason for

discounting the evidence she rejects. <u>See Stewart v. Secretary of H.E.W.</u>, 714 F.2d 287, 290 (3d Cir.1983).

<u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999).

It is against these legal benchmarks that we assess the instant appeal.

**D.    <u>This Case Should Be Remanded for Further Consideration of the Medical Opinion Evidence.</u>**

This case presents a striking circumstance. It is clear that the ALJ's medical opinion evidence evaluation rests upon a false premise, the notion that both state agency experts agreed that Lee could perform light work.

This was error. The opinion evidence was not evenly divided as the ALJ suggested in this decision. Rather, that opinion evidence revealed a broad consensus among treating, examining, and state agency sources restricting Lee to sedentary work, with only one outlying opinion. Because this error misstated the opinion evidence in a fundamental, and fundamentally prejudicial way, a remand is necessary here. This is not a novel conclusion on our part. Quite the contrary, it is entirely in accord with our past practice when presented with ALJ decisions which are based upon a misapprehension regarding the medical expert opinions. <u>See e.g.</u>, <u>Dunn v. Kijakazi</u>, No. 1:21-CV-91, 2022 WL 17584231, at *11 (M.D. Pa. Dec. 12, 2022); <u>Perfinski v. Saul</u>, No. 1:20-CV-78, 2021 WL 1060360, at *8 (M.D. Pa. Mar. 19, 2021).

22

Moreover, in the absence of some further explanation and articulation of its rationale, the ALJ's decision cannot be reconciled with the revised medical opinion regulations that the ALJ was obliged to follow. Those regulations eschew any hierarchical ranking of opinions, but call upon ALJ's to evaluate medical opinions against the following benchmarks:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

(3) Relationship with the claimant. This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.

(i) Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(ii) Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(iii) Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help

demonstrate the level of knowledge the medical source has of your impairment(s).

(iv) Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

(v) Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

20 C.F.R. § 404.1520c.

In this case, once the medical opinions are correctly described it is apparent that there was a consensus among the treating and examining sources that Lee was confined to a limited range of sedentary work. This consensus was also shared by the first state agency expert who review this case, Dr. Levandoski. Thus, when we consider the consistency of the medical opinions—one of the key factors which must now be assessed—it is evident that the greater weight of consistent opinion evidence favors a finding that Lee could only perform sedentary work. Moreover, these opinions represented not only the preponderance of the medical opinion evidence, two of the opinions were issued by treating or examining sources who had greater opportunities to assess Lee's limitations. In light of this significant medical evidence which undermined the ALJ's RFC determination, and the fact that this RFC seems

to rest upon a basic misunderstanding regarding the true state of the medical opinions, a remand is necessary in this case.

In sum, under the regulations governing evaluation of medical opinion evidence, more is needed by way of explanation in this case. Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV.    **<u>Conclusion</u>**

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

/s/ <u>*Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: March 10, 2025